All right, our second case this morning is United States v. Pemberton 22-7028. Mr. Kingston, you may proceed. Please the court and counsel. My name is Tim Kingston. I'm here on behalf of the appellant in this case, Paul Curtis Pemberton. First issue I'd like to address with the court is the application of the Ross v. Neff case. And on behalf of the appellant, I would submit that that case is directly applicable to this case and mandates reversal and remand. The Ross case squarely holds that state officers cannot make a warrantless arrest in Indian country outside of their jurisdiction. The, as the appellate argues, they attempt to avoid the reach of the Ross holding by relying on the recent Patterson case where, but I would argue that the court should decline to follow Patterson, both because it's an unpublished, unprecedented opinion, as the court knows, and for that reason alone should not apply it. What do we do with good faith? They thought that they were acting in their jurisdiction. You're talking about in the Pemberton case? Correct. That's what we're here to discuss is the Pemberton case. Sure, well I was just trying to, the appellate is relying on Patterson. I would argue that the officers here did not have a good faith basis on which to act in the way that they did, both with regard to their warrantless arrest of Mr. Pemberton some 20 or more years ago when the alleged crime that was, occurred, because they were acting in Indian country at that time, and they knew that Mr. Pemberton was an Indian, was a Native American, and they were acting on tribal land. Do we, do we? They didn't know they were acting in Indian country. Nobody did. Well, to me, Your Honor, that gets back to the Ross case, because the Ross case is clear, and it says that if they're acting, the state actors who do not have jurisdiction are effecting a warrantless arrest, then they don't have the jurisdiction to do so, and the evidence that emanated from that arrest here were incriminating statements made by Mr. Pemberton, and then we have the... The difference is that back in Ross, they knew that those were federal tribal lands that they were operating on, so they knew, or should have known, that they lacked jurisdiction. But I don't think the Ross... 20 years, in this case, it wasn't until 20 years later in McGirt that they discovered that they didn't have jurisdiction 20 years before. But I don't think the Ross case is limited in that respect, and that perhaps would allow me to argue the Patterson case, where they attempt to use, the government attempts to use Patterson to avoid the Ross, in my opinion, the clear holding of Ross and the clear application of Ross to this case. And first of all, we know that Patterson... But the facts are different. I mean, Judge Moritz has a very good point here. There, in Ross, the actors definitely knew that those were tribal lands. It was undisputed. They knew where they were. They knew where the jurisdictional lines were. Here, when these actions occurred, they did not know that McGirt was coming down the line. None of us did. None of us expected it or knew it. So for years, they proceeded with their work. They investigated crimes. They sought search warrants. They acted in good faith. But the argument I'm trying to make, Your Honor, perhaps I'm not being persuasive, is that whether they were acting in good faith at that time does not avoid the import of Ross to this case. That Ross still holds... Ross is still clear that the cases that the FLE relies on to try to distinguish Ross... versus the jurisdictional lines being totally unclear. For the purposes of Mr. Pemberton's appeal, I would agree with you. And just to reframe, I guess, the question a little, your argument is that the good faith exception should not be extended to the facts of this case. Correct. And I guess my question is because... if we're going to write the opinion in your favor, why doesn't good faith extend here? Is there something about the doctrine itself or the facts here? Or maybe you can just say that Ross is a per se rule that shouldn't be violated here. I think I would tend toward the latter, Your Honor. It's a bright line. Yes. And the cases the FLE relies on, which I address in the reply brief, are inapplicable to the facts of this case. And the government attempts to say, oh, gosh, Ross has been limited by all these other cases. Those cases don't... they don't touch the square and clear holding of Ross. Rather, they deal with... I'll give you the names of them as I reference them. In the U.S. v. Jones case, the issue there was whether there was a violation of... whether a violation of state law constituted a violation of federal constitutional law. This court said not necessarily. In the Swanson v. Mountain View case, the same holding was reached. In the U.S. v. Gonzalez, same thing. U.S. v. Sawyer, state actors were acting in another state, and the court found that was not a violation of the defendant's Fourth Amendment rights. I'm almost done. In U.S. v. Mikulski, again, a violation of state jurisdictional law does not constitute, in and of itself, a federal constitutional violation. In the U.S. v. Green case, it's the same. None of those touch Ross. Ross was, to pick up on Judge Briscoe's strong point, that was an event that happened, an arrest that happened in Indian country and by state actors who had no jurisdiction to be there, and that ruling, that set of facts is not affected at all by all those cases that I just went through. Let me interrupt. I misspoke on Ross. I'm looking at it here. I'd forgotten that it was a 1983 action, and the court actually did find that a reasonable county officer at that time executing the law would not have known that he was prohibited from making an arrest in the ballpark, which turned out to be in Indian land, and that's because of some inconsistent Supreme Court opinions at the time about whether or not state officers could have jurisdiction if it wouldn't intervene or compromise tribal or federal interests, which had since been decided. So it was clear at the time that there was no jurisdiction at the time of litigation, I guess, but these officers—it wasn't clearly established, so the officers were found to be immune from liability. That's what that case stands for. In that civil case— Well, that's the result of the case. That's the result, but, I mean, I guess I'm not seeing how anything about Ross would prevent us in a criminal case 20 years later where we have a situation where they certainly didn't know there was jurisdiction 20 years before from applying the good faith exception. I don't see any language in Ross that would even encompass this particular set of circumstances. But the Ross case holding, with regard to the issue that I'm applying it to in this case, is clear that they lack—state actors acting in Indian country to effect— Right, that's true. I'm repeating myself—lack the jurisdiction to do so. But it was a criminal case. The question was whether the officers—there was a constitutional violation for the officers, and if so, and there was, was the law clearly established? So, yes, there was a constitutional violation, but this is a criminal case. It doesn't tell us whether we can take the good faith exception into account in a criminal case. Well, I mean, if this court held that that was a constitutional violation under those exact circumstances, which are the exact circumstances here, I don't see how that ruling can be avoided by this court in Mr. Pemberton's case. Yes, I agree it was a civil case dealing with liability, but a constitutional violation is a constitutional violation, and the import of that should be imported over to this case, I would argue. Where did this crime occur? Pardon? Where did this crime occur? I mean, most specifically, it occurred at the appellant's father's home. No, in what tribal land? I want to— It's not clear from the record at all where we are. Gosh. Cherokee. Thank you, thank you. I was going to say Muskogee. Are we Cherokee or are we Muskogee Creek? Because it's been argued both ways by the government, at least, where this is. Does one spill over to the other? Do we care? And which tribe did McGirt address? I don't think the government— That was Creek. Pardon? McGirt was Creek. Right, so if we're in Cherokee, does it matter? I don't think it does in this case. Is that a plus for you? Certainly the government doesn't argue that point whatsoever. Well, do you? Anywhere. Do you?  It's not Cherokee. It's another one. I'm embarrassed and I apologize. It starts with a C. Choctaw? It's not Choctaw. Again, I'm— Okay. But I don't believe—the district court didn't deal with that issue at all. The government doesn't address that issue at all. I believe that the McGirt decision is directly on point and no one has argued otherwise. It covers all Indian lands wherever located in the state of Oklahoma. I would— We want to read it that broadly? Yes. Okay. And I haven't seen the government argue differently from that. And, again, I apologize for not having it at my fingertips. That's okay. So if I may just very briefly refer to the Patterson case there and try to distinguish that. There a— Just to clarify, I'm looking at the government's brief and it says there was a trial stipulation that the crimes alleged in the indictment occurred within the boundaries of the Cherokee Nation Reservation. I have help from the court. Thank you, Your Honor. Patterson is a different set of facts than what we have here. In Patterson, there a complainant was interviewed by a state officer. She gave—she said some things that the defendant in that case had done to her. And so they did an investigation. He had gotten—that deputy there had gotten a warrant to get a buccal swab, some DNA evidence from the defendant. And he went and spoke to the defendant. The defendant hadn't been arrested yet. The defendant gave some incriminating statements. And then the officer contacted his superior who said, yeah, you've got enough to arrest him at that point in time. So the arrest was a warrantless arrest. Then he acted on the search warrant and took the—got the DNA pursuant to the warrant. That's not the situation here. I mean, here we've got a completely warrantless arrest that led to incriminating statements that were used against the defendant at his trial and both the statements he made to the arresting officers and then statements he made to the state's investigator. So those facts—they're not just minor facts that differentiate the case. They show that the warrantless arrest in this case was fatal. It was fatal under the Ross case. So I guess, Your Honors, I would—unless you have some specific questions for me right now, I'd reserve the last two minutes of my time. Thank you, Counselor. We appreciate it, Mr. Kingston. Good morning, Your Honors. Counsel, may it please the Court. My name is James Braun, and I'm an assistant United States attorney appearing on behalf of the United States. The defendant's reliance on Ross is misplaced. As the government has argued in its brief, this Court can affirm the district court's decision denying his motion to suppress on two independent grounds, one, that there was no Fourth Amendment violation, and second, that even if there was, the good faith exception causes the Court to not invoke the exclusionary rule. As to the first issue, Ross would certainly address that, whether there was a Fourth Amendment violation. Now, the government has argued that Ross doesn't extend that far, that it has been limited, and that on the unique circumstances of this case, where you have officers reasonably relying on 100 years of practice and precedent, that given that reasonableness, there was no Fourth Amendment violation. Do we have any evidence of that? Was there any testimony that for 20 years or more, when I go out to this area, wherever it is located, although it's not clear that we really know where this house is located, but I'll just leave that alone, do we have any evidence that this has always been their practice to function in this area? Do we have that kind of evidence in this record? At the suppression hearing, they didn't go into a lot of detail about that. They focused mostly on the voluntariness of the statement that the Court really just took the pleadings as is. But don't we need to know that past practice piece to get to good faith? Agent Jones did testify that his practice was, and their practice with Oklahoma State Bureau of Investigations was, that in this land, unless it was Indian Trust land, they would investigate and prosecute. And that's consistent with McGirt's holding in general. Unless it was Indian Trust land. Okay, but does that say in this area specifically, we have always enforced laws here, we've always investigated laws here? I mean, I get your argument, unless it is. But what about if it is this, we're always there? I think the implication was, this was not Indian Trust land, and unless it was Indian Trust land, they would investigate. Now, I think there were some assumptions here because that is just the way it had been done for so long, and everybody there in that courtroom knew that's the way it had always been done. But I think you can read that into Agent Jones' testimony, that that's just what they did when it wasn't Indian Trust land. Now, this was in Chakota, Oklahoma, and that's Cherokee. We know that now, post-McGirt, because of an Oklahoma, I believe it was an Oklahoma appellate decision. McGirt, of course, dealt with Muskogee. And for the search, they had a warrant also, didn't they? They did, for the search of the truck. Now, to address Judge Briscoe's prior question, as far as where this occurred, so the murder occurred in Chakota, in Cherokee. The defendant was then transported to the McIntosh, I believe it was the McIntosh County Sheriff's Office. That's in Muskogee Creek Reservation, so that's why you have the two reservations. But primarily, it's Cherokee. Can you clarify, going back, you started out by saying you do dispute that there's a constitutional violation. I'm not really understanding that. Why doesn't Ross stand for that proposition? The only reason there was any consideration in Ross of whether a reasonable officer would have known that there was jurisdiction or was no jurisdiction is because it was a 1983 case, and they found a constitutional violation regardless of the officer's knowledge or reasonable belief. And then they went on to the clearly established problem and found it wasn't clearly established because they didn't have. But here, I don't see any reason why we would factor in at the constitutional violation stage the officer's reasonable belief. I understand your argument that that comes in on the good faith exception, but I don't understand why it would impact Ross' holding that there is a constitutional violation here. And I think that the primary distinction is that in Ross, everyone knew that this park was Indian country, that it was Indian trust land. In this situation— That's what I'm saying. I don't think in Ross it made any difference whether people knew or didn't know. It's a violation if the officers lack jurisdiction. Right, and I guess— And I'm saying that only went in Ross to the second question, which was whether the officers were entitled to immunity on the clearly established problem. Right, and I guess it comes back to basics of the Fourth Amendment. The Fourth Amendment prohibits unreasonable searches or seizures, and it's not unreasonable when you have 100 years of practice and precedent saying this is not Indian country to say there's no Fourth Amendment violation. Well, in Ross, there was a real question, too, about whether there was any jurisdiction. So that's not really different. So the court doesn't need to go there because of the good faith exception. And here, we would say the good faith exception clearly applies. The Patterson case, even though it's unpublished, is well-reasoned, and we would urge this court to follow it. It's directly on point. Now, and the defense has given the court really no reason— It's not directly on point. It involved a search warrant, and they specifically said we're not going to rule on that. It involved exactly the same issues we have here. It involved a search warrant. But they specifically said we're not going to rule on the arrest. They actually—there were two issues there. What the court said is it wasn't going to rule on the question of whether the good faith exception can apply to warrantless arrest because the defendant hadn't argued it. The defendant hasn't argued that here either. What the defendant in Patterson argued and what Mr. Pemberton argues is that the good faith exception should not be applied here. Not that it can't be applied as a matter of law, but that it shouldn't be. And so that both as to the warrantless arrest evidence and the search warrant evidence, the good faith exception shouldn't apply here. That's what the defendants in both Patterson and Pemberton argue. And the court in Patterson did address that second argument. It said that the defendant waived the question whether as a matter of law the good faith exception can't apply to a warrantless arrest. But it did address that the good faith exception was properly applied, assuming it could be, in that case. And the same is true here for the same reasons that the good faith exception should apply to the search warrant. And that is because the officers acted in good faith reliance on 100 years of practice and precedent. Now the exclusionary rule is designed to deter police misconduct. The Supreme Court has made that very clear since Leon. And in a long line of cases from Leon to Kroll to Herring to Davis, the Supreme Court has applied the good faith exception to situations where officers were acting in objectively good faith belief that their actions were lawful. And that's exactly what we have here. And following those cases in Workman, this court applied the good faith exception where agents executed a search warrant issued by a federal magistrate judge who was acting outside of his jurisdiction. And relying on Workman in Patterson, this court applied that line of cases to this very situation. And so we would ask that this court do the same. Now the defendant's second issue, the FREDA issue, did not come up in Mr. Kingston's argument. We would just note that a defendant is not entitled in this circuit to a FREDA hearing as a matter of right. A FREDA hearing is a means to an end on whether a defendant can invoke his right to represent himself. And here the record was very clear that the defendant intended to use his right to self-representation to do something totally aside from representing himself as sentencing and rather delaying sentencing and trying to litigate an untimely motion for a new trial or motion for acquittal. And so we would argue that the district court correctly denied Mr. Pemberton's motion to represent himself. Unless the court has any additional questions. I had a question about when we have our criminal cases docketed, we get a status telling us where the individual defendants are located. And I noted that Mr. Pemberton is in state custody. I'm not aware of that. My understanding is, though, that his state conviction was not vacated, that ultimately the Oklahoma court denied his habeas motion. And so his state conviction still is valid. And so that may be why he's in state custody. But I don't know the answer for sure. So at the end of the day, he could be doubly convicted for the same crime. First in state court and now in federal court. That's my understanding. I have not looked at the state docket recently to see if he's appealing that and what the status of that is. It could be that ultimately the state conviction does get vacated. But as of now, my understanding is. So this action that we're looking at is basically insurance? I guess you could call it that. And I think just because of the uncertainty where some cases were vacated and the federal government just stepped in right away to prosecute. Vacated in state court. In state court based on the GERD, yes. Thank you. Thank you, counsel. We appreciate the argument. Thank you. Got some rebuttal time left? Yes, Judge Briscoe. He is in state custody at this time and remains so. And has been throughout. Yeah. All right. This is the first case since Ross that squarely brings this issue to the court. Did your research disclose any comparable cases from other circuits? I did not. I did attempt to do. Or I did do research with regard to that. I did not find other cases that reached Your Honor's question. And certainly not in this circuit, I would say. With regard to the other issues that counsel briefly touched on, the Feretta issue, I came in secondhand, so to speak, into this case and only filed the reply brief. And I rely solely and adopt all of those arguments made by prior counsel. Judge Briscoe, you've prompted me perhaps to think of this matter in a slightly different way when you raised the issue of what evidence there was in the record with regard to the good faith, the history as to how these officers acted. And I would submit that in the absence of that kind of evidence, how can this court and how could the district court have made an objective determination that these officers acted in good faith? I mean, I assume the fallback position was, well, heck, we don't even think of that. We've been doing it for so long it's not even a question that would occur to us. But I think it's a question that should occur to this court. And with the lack of that kind of evidence of any kind in the record, I don't see it. Well, we do have some writings by the Chief Justice of the United States Supreme Court that say, you know, today for the first time it is announced that after, yay, these many years of practice, that the lines are suddenly different in Oklahoma. Well, how does that? Well, I'm not asking a question of Your Honor. That was a dissent. But it was the Chief Justice. And it's coming down to the issue of this case. And it lays out the very point that we're talking about, is what was the ongoing practice? What did people know? What did they do and why did they do it? Well, to me that's the point, Your Honor. I think just everybody just assumed because we've been doing it for so long like that, that that's allowable. And I don't see how this court can or should reach that same determination based on what is in the record in this case. Thank you. I appreciate your argument. Thank you for volunteering to work on these cases. Counsel excused and the case is submitted.